UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LAWRENCE HANNON, et al.,<br><br>Plaintiffs,<br><br>v.<br>WELL FARGO HOME MORTGAGE, aka WELLS FARGO BANK, NA, et al.<br><br>Defendant. | Case No.: 2:10-cv-00966-MMD-GWF<br><br>ORDER<br><br>(Motion for Summary Judgment, dkt. no. 45; Motion for Summary Judgment, dkt. no. 47; Motion for Partial Summary Judgment, dkt. no. 60) |

Before the Court are Defendant Wells Fargo Home Mortgage's ("Wells Fargo") Motion for Summary Judgment (dkt. no. 45, filed Oct. 19, 2011), Defendant Trustee Corps. Motion for Summary Judgment (dkt. no. 47, filed Oct. 19), and Plaintiffs Lawrence and Luz Hannon's Motion for Partial Summary Judgment (dkt. no. 60, filed Nov. 14). The Court has also considered the relevant oppositions and replies to these motions.

**BACKGROUND**

The Hannons purchased the property located at 6825 Council Heights Way, Las Vegas, NV 89142 (the "Property") in April 2007. The Hannons executed a promissory note (the "Note") promising to repay the loan they used to purchase the Property and secured it with a deed of trust ("Deed of Trust") currently owned by Wells Fargo. The Note carries a fixed interest rate at 6.00% for a term of 30 years. In 2009, the Hannons

defaulted on their loan and Wells Fargo instructed Trustee Corps. to file a notice of default and election to sell against the Property.

The Hannons elected to participate in the Nevada Mediation Program hoping to avoid foreclosure on their property. Ira A. Pergament, an attorney, conducted the Mediation at his law offices on March 3, 2010. Lawrence Hannon attended, but Luz Hannon did not. Wells Fargo used a third party representative agent, Trent Loucks, to appear in person, and a Wells Fargo employee, Philip Cargioli, participated by phone from Fort Mill, South Carolina. During the mediation process, the Loucks and Lawrence Hannon signed a one-page document entitled "Mediation Agreement" (dkt. no. 45, Ex. 4). Luz Hannon did not sign as she was not present. The Mediation Agreement stated: ". . . basic terms: Term extended to 40 yrs, interest rate of 6% (fixed) remains, payment to be $2,122.15 (PITI), 1st payment due 5/1/10, payment of $4058.88 representing foreclosure costs & fees due 4/15/10."

Notwithstanding this agreement, Wells Fargo instituted new foreclosure proceedings about one month after the mediation claiming that the Hannons had not sent the financial documents Wells Fargo required to modify the loan (specifically, their last two pay stubs, last two months bank statements, and the prior years' tax filings). Wells Fargo again directed Trustee Corps to file a notice of default and election to sell along with an election of mediation form. Rather than electing to mediate again, the Hannons filed this suit.

The Hannons allege: 1) breach of contract, 2) breach of the covenant of good faith and fair dealing, 3) promissory estoppel, 4) tortious breach of the implied covenant for good faith and fair dealing, 5) misrepresentation, 6) negligent misrepresentation, 7) negligence, 8) quantum meruit/unjust enrichment, and 9) injunctive relief. The misrepresentation and quantum meruit/unjust enrichment claims are only pled against Wells Fargo; all other claims are pled against both Wells Fargo and Trustee Corps. Now before the Court are three motions for summary judgment, one from each party.

For the reasons discussed below, the Court grants Wells Fargo's and Trustee Corps.' motions and denies the Hannons' motion.

**DISCUSSION**

**I.    Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its

3

ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Rule 56 further provides that "[i]f a party . . . fails to address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." This Court's local rules likewise provide that "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute consent to granting of the motion." LR 7-2(d).

**II.    Analysis**

As the three motions before the Court are all motions for summary judgment, the Court will address them concurrently rather than individually. The Court grants summary judgment for each of the two Defendants for three principle reasons: 1) the Hannons failed to form a contract at the mediation because the Mediation Agreement lacked essential terms, 2) Luz Hannon, one of the owners of the Property, did not sign the Mediation Agreement, and 3) the Hannons failed to dispute, and therefore admit, that they suffered no damages. The Court will address each issue in turn.

///
///
///
///

**A.     Breach of Contract**

To succeed on a breach of contract claim, a plaintiff must show: (1) a valid contract, (2) that the plaintiff performed or was excused from performance, (3) defendant failed to perform, and (4) the plaintiff suffered economic damage as a result of the defendant's breach.  *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (1987).

          **1.     Contract Formation**

The Hannons failed to form a contract at the mediation because the Mediation Agreement lacked essential terms.  For a contract to be formed or an agreement to be enforceable, the parties must agree to all of the essential terms.  *EEOC v. Kidman*, 244 Fed. Appx. 70, 72 (9th Cir. 2007). Generally speaking, the essential terms of a loan contract are who the parties are, the amount of the loan, and the repayment terms. *Peterson Dev. Co. v. Torrey Pines Bank*, 284 Cal. Rptr. 367, 374 (Cal. Ct. App. 1991). In Nevada, however, it is now an unfair lending practice to issue a low-document, no-document, or stated-document home loan, "without determining that the borrower . . . has the ability to repay the home loan."  NRS 598D.100.  Therefore, it is an implicit and necessary requirement of any home loan contract in Nevada that the buyer provide the lender with sufficient financial documents to qualify the buyer for the loan.  (This is likely why the Mediation Program requires homeowners to provide this information to their lenders before mediations.)

The Hannons do not contest that they did not send Wells Fargo their financial documents two weeks prior to the mediation as the Mediation Program requires. Neither do the Hannons dispute that Lawrence Hannon arrived at the mediation program without the financial documents he was required to bring. Thus, NRS 598D.100 prevented Wells Fargo from entering into an enforceable loan agreement at the mediation without having reviewed the Hannons' financial information.  Because of the requirements of NRS 598D.100, the Mediation Agreement is contingent on Wells Fargo's determination of the Hannons' ability to pay after a review of their financial

information. The result is there was no meeting of the minds on all essential terms of the Mediation Agreement.

The Hannons argue vociferously that sending in the financial documents was not an express term of the Mediation Agreement (though, they also argue that they did later send in the documents). This argument only underscores the legal deficiency that renders the Mediation Agreement unenforceable. This necessary requirement for entering into a binding home loan (and, therefore, modification) – Wells Fargo's determination of the Hannons' ability to pay – was not made a part of the Mediation Agreement and therefore cannot bind Wells Fargo to enter into a future modification with the Hannons. Otherwise, this would be a contract to enter into an illegal agreement, which is of no force and effect. *See Kaiser Steel Corp. v. Mullins*, 455 US 72, 77 (1982) (referring to an act illegal under federal law); *see also Martinez v. Johnson* 119 P.2d 880, 882 (Nev. 1941). Thus, the Mediation Agreement did not contain all of the essential terms necessary in these particular circumstances (specifically, a foreclosure mediation where the borrower does not bring and has not previously provided their financial documents). Therefore, the Mediation Agreement is not a binding and enforceable contract.

**2.      Luz Hannon's Failure to Sign**

Further, the Plaintiffs are husband and wife and own the Property as joint tenants. (Dkt. no. 46, Request for Judicial Notice Ex. 2, Grant, Bargain, Sale Deed.) Under Nevada law, neither spouse may encumber the property unless the other spouse joins in the execution of the instrument by which the property is encumbered and both acknowledge the instrument. NRS 123.230(3). Here, Luz Hannon did not join in the execution of the instrument because she did not attend the mediation and, more importantly, failed to sign the Mediation Agreement. Therefore, the Mediation Agreement is not an enforceable contract to modify the loan because the instrument by which the Property was allegedly encumbered (or required the Property to later become encumbered) is invalid.

The Hannons argue that NRS 123.230(3) does not apply because the Mediation Agreement did not purport to sell, convey, or encumber the Property. Rather, the Hannons argue, the Mediation Agreement required them to separately execute a formal contract. As such, to avoid invalidity because Luz failed to sign the Mediation Agreement, the Hannons argue that the Mediation Agreement was merely an agreement to agree and Wells Fargo failed to later enter into a separate contract with them. However, a mere "agreement to agree" is generally non-binding and unenforceable. *Smith v. Crown Fin. Serv. of Am.*, 890 P.2d 769, 771 (Nev. 1995). Thus, either the Mediation Agreement is an invalid contract because Luz Hannon failed to sign it under NRS 123.230(3) or an unenforceable agreement because it is a mere agreement to agree. Either way, the Parties failed to enter into an enforceable contract.

### 3. Damages

Not only have the Hannons failed to show the existence of a valid and enforceable contract, they also fail to show damages, an essential element for a breach of contract claim. Here, Defendants argued and provided evidence that the Hannons suffered no damage because Lawrence Hannon testified at his deposition that he lost his job sometime after the mediation and would not have been able to make the payments required under the Mediation Agreement. (Dkt. no. 45, Mot. Ex. 5, Lawrence Hannon Depo. 21:9-14; 92:4-23.) The Hannons entirely failed to dispute or even address with a single sentence Defendants' arguments and evidence regarding damages. Thus, the Court deems the issue undisputed for purposes of these motions, *see* Fed. R. Civ. P. 56(c), and finds that the Hannons suffered no damages. Accordingly, the Hannons breach of contract claim also fails for failure to demonstrate an issue of material fact as to damages.

### B. Remaining Claims

Each of the Hannons' remaining claims also fail. The Court will briefly address the reasons why each claim fails.

### 1. Breach of the Covenant of Good Faith and Fair Dealing

The Hannons allege both contractual and tortious breach of the covenant of good faith and fair dealing. Both causes of action, however, require that the parties be party to a mutual contract. *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995). As the Court has shown above, the Hannons have not shown a question of material fact as to the existence of a contract between them and Wells Fargo (or Trustee Corps.). As no contract between the Parties exists, there can be no claim (contractual or tortious) for breach of the covenant of good faith and fair dealing. Further, a tortious breach claim requires a special element of either (1) reliance or (2) fiduciary duty because the defendant was in a superior or entrusted position, *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 10 (Nev. 1989). This Court has repeatedly held that the lender/borrower relationship does not create such a special relationship and despite all of the Hannons protestations to the contrary, they present no evidence or law that changes these decisions. *See, e.g.*, *Yerington Ford, Inc. v. General Motors Acceptance Corp.*, 359 F. Supp. 2d 1075, 1090 (D. Nev. 2004) (stating "the Court is satisfied that the Nevada Supreme Court would hold that an arms-length lender-borrower relationship is not fiduciary in nature, absent exceptional circumstances") (*aff'd in relevant part by Giles v. General Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir. 2007)); *Hampton v. Countrywide Home Loans*, 2:10-cv-01775-RLH-GWF, 2011 WL 1792743 at *3, (D. Nev. May 11, 2011). Thus, the tortious claim fails for that reason as well.

### 2. Promissory Estoppel

The Restatement (Second) of Contracts states that a claim for promissory estoppel exists where a defendant makes "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance" and where "injustice can be avoided only by enforcement of the promise." Restatement (Second) of Contracts § 90 (1981). Here, the Hannons have not presented evidence of reasonable reliance or

damages and did not even address Defendants' arguments regarding promissory estoppel in their response. Accordingly, the Hannons promissory estoppel claim fails.

### 3. Misrepresentation

Under Nevada law, a claim for fraud or misrepresentation requires a party to prove each of the following elements: (1) a false representation; (2) knowledge or belief that the representation was false (or knowledge that the defendant had an insufficient basis for making the representation); (3) intent to induce the plaintiff to consent to the contract's formation; (4) justifiable reliance upon the misrepresentation; and (5) damage resulting from such reliance. *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1017 (Nev. 2004). The Hannons argue that Wells Fargo never intended to enter into a loan modification under the terms of the Modification Agreement. However, they present no evidence, other than the failure to enter into an actual modification contract and the filing of the second notice of default, to show that Wells Fargo knew or believed it would not enter into a modification. This is insufficient to establish a claim for misrepresentation as a matter of law. Restatement (Second) of Torts § 530 cmt. d. Neither do they present a false statement of fact, merely what they claim was a false statement of future intent. This is also an insufficient basis for a fraud claim without some evidentiary basis that Wells Fargo never intended to follow through, which the Hannons fail to provide. *See Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992). Finally, because the Hannons failed to dispute the issue of damages anywhere in their response to the motion or in their counter motion, there is no dispute that the Hannons were not damaged because they could not abide the terms of a modification if they had ever entered into one because Lawrence Hannon is no longer employed. Thus, the Hannons' misrepresentation claim fails.

### 4. Negligent Misrepresentation

The Nevada Supreme Court has adopted the Restatement (Second) of Torts § 552 definition of negligent misrepresentation as follows:

> "One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998). Thus, the Hannons negligent misrepresentation claim also fails for lack of damages and failure to provide evidence of a false statement of present fact.

### 5. Negligence

To bring a negligence claim in Nevada, a plaintiff must show that: (1) defendant owed plaintiff an existing duty of care; (2) defendant breached that duty; (3) defendant's breach was the legal cause of the plaintiff's injuries; and (4) damages. *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175 (Nev. 2008). The Hannons failed to offer any genuine issue of material fact to oppose summary judgment on their negligence claim. They also failed to address Defendants' argument that they cannot demonstrate they suffered any damages. Rather, the Hannons merely argued that the economic loss doctrine did not bar such a claim. While this may or may not be true, the failure of a particular defense is insufficient to support a claim.

### 6. Quantum Meruit / Unjust Enrichment

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Asphalt Prods. Corp. v. All Star Ready Mix*, 898 P.2d 699, 701 (Nev. 1995). To state a valid claim for unjust enrichment, a plaintiff must allege: (1) plaintiff conferred a benefit on defendant, (2) defendant appreciated such benefit, and (3) defendant accepted and retained the benefit. *Topaz Mutual Co. v. Marsh*, 839 P.2d 606, 613 (1992) (citation omitted). Here, the Hannons have not presented any evidence of any benefit they conferred on Wells Fargo other than past mortgage payments which it was entitled to. Further, Plaintiffs merely state that their quantum meruit/unjust enrichment claim is plead alternatively to their contract based

claims without any further explanation. This is far from sufficient to survive summary judgment and is, in essence, a failure to respond. Thus, this claim also fails.

### 7. Injunctive and Declaratory Relief

The Hannons' claims for injunctive declaratory relief are not actually claims, but requests for relief. Thus, the Court grants summary judgment here as well.

### C. Summary

In summary, the Court grants summary judgment on each of the Hannons claims because they did not enter into a valid and enforceable contract with Wells Fargo (or Trustee Corps.), failed to present any evidence to demonstrate a genuine issue of material fact exist to defeat summary judgment or to support their tort claims, failed to demonstrate that they suffered damages in support of any of their claims, or failed to address Defendants' arguments. Also, though largely unaddressed, the claims as pled against Trustee Corps. fail for the same reasons as they fail as pled against Wells Fargo even though Trustee Corps.' arguments focused on other issues. Thus, each of their claims fails as a matter of law.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Wells Fargo's Motion for Summary Judgment (dkt. no. 45) is GRANTED.

IT IS FURTHER ORDERED that Trustee Corps. Motion for Summary Judgment (dkt. no. 47) is GRANTED.

IT IS FURTHER ORDERED that the Hannons' Motion for Summary Judgment (dkt. no. 60) is DENIED.

The Clerk of the Court is directed to close this case.

DATED THIS 26th day of June 2012.

_____
UNITED STATES DISTRICT JUDGE